In the matter of Hare.

## UNITED STATES DISTRICT COURT.

### In the matter of UTLEY HARE, a bankrupt.

Marshal in a case of involuntary bankruptcy allowed $2 50-100 a day for services of a custodian in charge of the goods seized, although the register finds that he should have boxed and stored the goods, and that such custodianship was unnecessary; marshal's claim for a *further allowance* under section 47 rejected.

*Southern District of New York, in Bankruptcy.*

At chambers, 4 Warren street, in the city of New York, in said district, on this 8th day of March, A. D., 1872.

I, the undersigned, register in charge of the above entitled matter, do hereby certify, that upon the taxation of the marshal's costs therein, I was attended by Chas H. Wigbt, Esq., the assignee of said bankrupt and the said marshal, by his deputy, Oliver Fiske, Esq., who presented for taxation a bill of the items of his said costs and fees, which bill is hereto annexed. That I proceeded to take the testimony of James Turney and Oliver Fiske, which is hereto annexed. That after hearing the respective parties, I taxed and deducted from said bill the following items, to wit:

| | |
|---|---|
| " Copying papers | $1 00 |
| "Advertising in *Commercial Advertiser* | 4 50 |
| " 24 days custody, from January 29 to February 22d, "at $2 50 | 60 00 |
| " Allowance to marshal" | 25 00 |
| | $90 50 |

That as to the said item of $60, and the said item of $25, the marshal excepted to said taxation, and requested that the point be certified to the district judge for decision.

In the matter of Hare.

And I further certify, that the reasons for taxing said item of $60 from said bill, are as follows:

It appears from the testimony, that the property in question was a quantity of hardware upon the second floor or first loft, of a building, the first floor, and the second and third lofts of which were used by other parties for mercantile purposes. That said goods were deemed sufficiently secure at night by locking the door of the room in which they were, the custodian keeping the key. If so secured in the night, it is not suggested that they would not be equally secure under the lock and key in the day time. The suggestion that business letters that might contain money, drafts or other valuables, are usually directed to the place of business, and might fall into the hands of unreliable persons in case the marshal's custodian was not there to receive them, is answered by the fact, that if the door of the room were locked the postman would scarcely deliver them to a person outside. Besides, it would be easy to arrange with the postman, for the same man comes to the building every day to deliver letters—to deliver such letters at the marshal' office, or elsewhere.

But I think, the marshall is bound to deal as economically with property that he seizes under a warrant as if the property were his own, by purchase or otherwise. It cannot, in such case, be pretended, that he would be at the expense of having one man spend his time in watching it for the space of a month or so. He would either lock up the room or box and store the goods.

And when it is considered, that the responsibility of the marshall for loss of such goods, is measured by what is called ordinary care, such care as prudent men ordinarily take of their own property, the suggestion of his liability in such a case is absurd (*See Browning* agt. *Hanford,* 5 *Hill.,* 588; *Moore* agt. *Westervelt,* 1 *Bosw.,* 357; *Jenner* agt. *Joliffe,* 6 *Johns.,* 9.)

It may be suggested, that the marshal should be allowed

upon this item, a sum equal to what it would have cost to have boxed and stored the goods.

In answer to this, it appears that about the 12th of February, the landlord of the premises in which the goods were, obtained possession by summary proceedings, and the marshal was then obliged to, and did box the goods and store them elsewhere. A bill amounting to $169 33-100 for thus boxing, removing and storing, is presented to the assignee by McEntee & Co.

I took the testimony of Chas. McEntee, a member of said firm of McEntee & Co., and herewith hand the same to the court, with the bill and vouchers annexed; from which it appears, that McEntee & Co., did this work with the aid of the men of the deputy marshal, and that they paid said deputy $30 for the aid so rendered by his men. If, therefore, the marshal were allowed anything for such expenses, it would be to pay a second time for the same services. Had the marshal in the first instance done this boxing, and removing it would have avoided all pretext of claim for custodianship, and put the estate to no more expense than it has now incurred therefor.

The fact that the attorney for the petitioning creditors at the time he handed the warrant to the marshal, expressed the opinion, that it would be necessary to put a man in charge, I don't deem material He could at best bind but one of the creditors, and I don't think that the marshal can substitute the opinion of the attorney for his own. He must act upon his own official discretion in the execution of the warrant.

As to the item, " allowance to the marshal, $25," I don't understand that it is claimed, that any extra or unusual services were rendered in the case, none are stated certainly. If this item is allowed, it must be under the provisions of section 47, which is in these words. " For cause shown and upon hearing thereon such further allowance may be made as the court in its discretion may determine." It is

clear, that something beyond the ordinary duties which a marshal is called upon to discharge in all cases, is here contemplated. I cannot think, that the present case is brought within the purview of this provision.

As the taxation of the other two items were not excepted to, I need not state why they were rejected. Respectfully submitted, I. T. WILLIAMS, register.

BLATCHFORD, J.—I think it is proper to allow the item of $60, and to disallow the item of $25.

The clerk will certify this decision to the register; ISAIAH T. WILLIAMS, Esq., March 8th, 1872.